BOWEN (LEE v.). See Case No. 8,183.

BOWEN (PAWTUCKET INST. FOR SAVINGS v.). See Case No. 10,852.

BOWEN (TOUCEY v.). See Case No. 14,107.

BOWEN (UNITED STATES v.). See Cases Nos. 14,628 and 14,629.

---

## Case No. 1,725.

### BOWEN v. WATERS.

[2 Paine, 1.][1]

Circuit Court, S. D. New York. Oct. Term, 1827.

SPECIFIC PERFORMANCE—REQUISITES OF CONTRACT—MISTAKE.

1. On a bill for specific performance, the rule of courts of equity is, that the agreement should be certain, fair and just in all its parts, and that all the material parts should be known to both parties; and if any of these ingredients be wanting in the case, a decree will be refused.

[See Kendall v. Almy, Case No. 7,690; Smith v. Burnham, Id. 13,019; Oakley v. Ballard, Id. 10,393; King v. Thompson, 9 Pet. (34 U. S.) 204; McConnell v. Lexington, 12 Wheat. (15 U. S.) 582.]

2. The contract of which specific performance is sought, ought not only to be proved, but the terms of it should be so precise that neither party could reasonably misunderstand them; and if it be vague or uncertain, a court of equity will not exercise its extraordinary jurisdiction to enforce it, but leave the party to his legal remedy.

3. Nor will it compel a specific performance where the contract is a hard or unreasonable bargain, or where there has been any sort of surprise which renders it unfair to call for an execution of it.

4. There is a very important distinction running through the cases between ordering a con-

---

[1] [Reported by Elijah Paine, Jr., Esq.]

tract to be rescinded and decreeing a specific performance; and the latter kind of relief is often denied even where the circumstances are not sufficiently strong to induce the court to require the contract to be given up.

5. Although a party contracting through an agent, being ignorant of facts with which his agent was acquainted, may yet have bound himself at law, it does not follow that a specific performance would be decreed if there was clearly such a mistake or misapprehension as to the subject-matter of the contract as to render it unjust or inequitable to enforce it.

[In equity. Bill by Ephraim Bowen against Jason Waters for specific performance. Dismissed.]

R. Sedgwick, for complainants.
H. Ketchum, for defendants.

THOMPSON, Circuit Justice. The bill in this case was filed to compel a specific performance of a contract alleged to have been entered into by the defendants for the purchase of a cotton factory at Newport, on the east side of Canada Creek, in the county of Herkimer.[2] The contract, if at all concluded between the parties, is to be collected from sundry letters which passed between some of the parties in relation to this purchase. And one of the difficulties in the case is, to ascertain with any satisfactory certainty and precision from this correspondence what the contract was. The great question seems to be as to the nature and extent of the water-privilege embraced within the contract, and which was to be conveyed by the complainants to the defendants.

It seems to be admitted by the bill, that this privilege was, at least, water sufficient at all seasons of the year to drive one thousand spindles in certain machinery called water-frames, and the necessary apparatus and machinery to prepare cotton for spinning, according to the practice in January, 1812, and sufficient water for a machine-shop to make and repair machinery for the use of said mill and factory. On the part of the defendants it is contended that there was no such limitation upon this water-privilege; but that the complainants were to convey to them the first water-privilege sufficient to

---

[2] It is a matter of discretion in the court whether or not to decree a specific performance; not dependent, however, upon the arbitrary pleasure of the court, but regulated by general rules and principles. Rogers v. Saunders, 16 Me. 92. When a contract in writing is certain, fair in all its parts, is for an adequate consideration, and is capable of being performed, it is a matter of course for a court of equity to decree performance. Id. The performance may in a proper case be decreed, where the party has lost his remedy at law. Id. But negligence in the performance of contracts, are not thereby to be encouraged; and the party seeking performance must show that he has not been in fault, but has taken all proper steps towards performance on his own part, and has been ready to perform. Id. Where the binding efficacy of a contract has been lost at law, by lapse of time, a court of equity will grant relief, where time is not of the essence of the contract. Id. A written agreement concerning lands may be enforced in equity, although binding only on the party to be charged. Id. The court will not compel a specific performance, where the remedies are not mutual, and where the party who is not bound, lies by to see whether it will be a gainful or a losing bargain to abandon it in the one event, and in the other to consider lapse of time as nothing, and claim a specific performance. Id. A bill for a specific performance, by a vendor against a purchaser, is not to be dismissed upon the mere ground that the vendor's title was not perfect at the time of filing the bill. Dutch Church v. Mott, 7 Paige, 77. A specific performance may be decreed if it appears by the master's report that the vendor is in a situation to give a perfect title, except where the purchaser has been materially injured by the delay. Id. A party having an equitable title by a contract, complete in all its parts, is entitled to a specific performance of course. Buchannon v. Upshaw, 1 How. [42 U. S.] 84. The specific performance of an agreement is not a matter of right, which a party can demand from a court of equity, but is a matter resting merely in the sound discretion of the court. Tobey v. County of Bristol [Case No. 14,065]. Equity views a bond conditioned to convey land as articles of agreement, and will decree a specific performance of the condition. Fitzpatrick v. Beatty, 1 Gilman, 454. A party can-

not compel the specific performance of a contract in a court of equity, unless he shows that he himself has specifically performed, or can justly account for the reason of his non-performance. Scott v. Shepherd, 3 Gilman, 483. If a party seeking to enforce a specific performance wishes to set off against the amount to be paid by him, an indebtedness to him from the other party, he should lay the proper foundation for it in his bill, or he cannot be relieved. Id. A bill in equity to enforce the specific performance of a contract, must show a complete performance of all the stipulations on the part of the complainant to entitle him to a decree. Church v. Jewett, 1 Scam. 54. A party seeking the specific performance of a contract, for the sale and conveyance of a tract of land, cannot excuse himself for not tendering the purchase money, when due, upon the ground that the vendor had conveyed the land to a third person. Doyle v. Teas, 4 Scam. 202. An application for the specific performance of a contract, is addressed to the sound legal discretion of the court. Frisby v. Ballance, Id. 287. It is no objection to enforcing the performance of a contract for the sale of the lands in behalf of the vendee, that the vendor did not own the lands when the contract was made. If he can make a good title to all at the time of the decree, the court will direct him to convey the whole; if he can make title to a part only, the vendee may take such part with a compensation for the residue. Allerton v. Johnson, 3 Sandf. Ch. 72. If the vendor contracts to sell land, and the title of a part of it fails, the vendee may claim a specific performance of contracts, as to that part of the land to which the vendor can give him a title, and for a compensation in damages as to the part of the land to which the title fails. Morss v. Elmendorff, 11 Paige, 277. The court of chancery may decree the specific performance of a contract for the sale of lands lying in another state, where the party who is to make the conveyance is within the jurisdiction of the court, and has been served with process. Sutphen v. Fowler, 9 Paige, 280. And where the defendant in such a suit is an infant, the proper decree is, that he convey the legal title to the premises when he arrives at the proper age to enable him to do so, according to the laws of the state where the property is situated; and that in the meantime the vendee be permitted to re-

drive whatever number of spindles they chose to put into the factory, and the use of water for a machine-shop for whatever machinery they might wish to make. The correspondence was not carried on in the name of all the parties, and some parts of it cannot be understood as being in behalf of the parties to the present suit. It was commenced in the summer of 1825, by a letter from Jason Waters to Ephraim Bowen, making some inquiries in relation to the factory. To which Bowen on the 16th of September, 1825, answered, and among other things stated, "that the cotton-mill has secured to its owners at all times a sufficiency of water in preference to all other mills to turn and operate one thousand spindles of water-frames, with a machine-shop and preparation for spinning cotton as in the year 1812," and at the close of the letter adds, "if after waiting a reasonable time we do not hear from you, we shall conclude that you do not mean to purchase." On the 16th of November following, this letter was answered declining to make the purchase, and inquiring whether a lease of the cotton-factory could be had. This was refused. Thus the treaty for a purchase must be considered as broken off. And it is proper here to notice, that

Jason Waters had thus far acted with the view and expectation that a Mr. Wolcott would unite with him in the purchase, and not the other defendants. It is material to notice this, because the letter of the 16th of September is the only one that speaks of the water-privilege particularly. The subsequent correspondence after the other two defendants became in any manner parties to it, only speaks of the cotton-factory and appurtenances in general terms; and when any mention is made of the water-privilege, it is spoken of as the first water-privilege. If the letter of the 16th of September is considered as sufficiently designating the extent of the water-privilege, the inquiry would arise, how far the other two defendants were bound by the communication to Jason Waters, at a time when they had no interest or concern in the purchase.

Jason Waters, in his answer, admits he received the letter of the 16th of September, but states that as he had then relinquished the idea of purchasing the property, he only read the letter and filed it away, and paid little attention to its contents, and that he did not show it to the other defendants or either of them, or communicate to them the contents; and the other defendants deny

ceive and retain the possession of the property. Id. The owner of two lots which had been sold on an execution against him, agreed with M. that she should buy one of the lots, and pay the price by redeeming both from the sheriff's sale. M. was to take a deed from the sheriff, pay all liens and charges, and on receiving the surplus, beyond the price of the one lot, with interest at a day fixed, was to convey the other lot to the vendor; or if such payment were not made, was to retain both lots. The vendor was, by a like covenant, to give possession of the lot sold to M. Held, that by the agreement, M. became the purchaser of the one lot, and took the other lot as a security for her advances beyond the price of the former; and that she was bound to convey to the vendor, on being refunded such excess, with interest. Barton v. May, 3 Sandf. Ch. 450. Held, further, that if the contract were to be treated as an agreement by M. to sell the other lot to the former owner, on payment of such excess, and receiving possession of the one at the time stipulated; a partial failure to deliver possession at that time, would not warrant M. in refusing to convey the other lot, on receiving the excess. Id. Where parties contracted for the sale of land, for a gross sum or price, under a mutual mistake as to the quantity contained in the parcel sold, believing it to contain about a fourth more than its actual contents, and the vendee has taken possession, made valuable permanent improvements, and paid nearly all the price; equity will compel the vendor to convey the land actually owned by him, with a ratable deduction from the price for the deficiency. Voorhees v. De Meyer, 3 Sandf. Ch. 614. D. sold to G. by an executory contract, two lots of wild land, which, by the survey and location thereof, made for D. and others, contained 187½ acres; the one intending to sell, and the other believing that he was buying the lots as thus surveyed. It turned out that in making such survey and location, the surveyor had extended and marked his line beyond the true boundary of the tract he was laying out, and had thereby included 43½ acres in D.'s two lots, to which he never had any right or claim. Held, that

this was a case of mutual mistake. That the deficiency was not in the subject-matter of the contract, for that was the two lots as marked and surveyed for D.; but that the difficulty was in giving title to that subject-matter. Id. Equity will not compel a purchaser to take land which is involved in a doubtful and disputed question of boundary. Id. In a suit by the vendor, to compel the specific performance of a contract for the purchase of land, a performance may be decreed, if the complainant is able to make a perfect title to the premises at the hearing. Baldwin v. Salter, 8 Paige, 473. But where the complainant asks for an injunction to restrain the defendant from parting with the property which was to be transferred in payment of the complainant's land, or for a receiver of such property, he must show that he is in a situation to fulfil the contract; and it is not sufficient to show that he may possibly be able to perform the contract at the hearing of the cause, but he must show a present ability to perform it, where the defendant has a right to require an immediate performance of the agreement. Id. The granting a specific performance is not a matter of right but is always a matter of sound and reasonable discretion, which grants or withholds relief, according to the circumstances of each particular case. Mathews v. Terwilliger, 3 Barb. 50. Where the vendee, in a contract for the sale of lands, gave notice to the vendor of his refusal to perform the contract, held, that no tender of a deed by the vendor was necessary, in order to sustain a bill for specific performance. Crary v. Smith, 2 Comst. [2 N. Y.] 60. Where in a contract for the sale of lands, the purchase-money is to be paid or secured, and the conveyance executed, on a particular day, and neither party performs, or offers to perform on the day, either party may claim specific performance in equity, making the offer incumbent on him in the bill; and the failure to make a tender before the commencement of the suit, will only affect the question of costs. Stevenson v. Maxwell, Id. 408. A bill for specific performance may be maintained against the heirs of the vendor. Newton v. Swazey, 8 N. H. 9.

having any knowledge of this letter or the limitation upon the water-privilege as now set up on the part of the complainants; and the answer of the defendants, in this respect, is not disproved. This letter of the 16th of September, and whatever passed between the complainants and Jason Waters prior to the 16th of November, when he wrote to Ephraim Bowen that he had given up the purchase, must be laid out of view as it respects the other defendants; and their contract, if any was entered into, must be collected from what passed after that time; and no part of the subsequent correspondence will warrant the conclusion that the defendants understood there was to be any such limitation in the use of the water as is now set up, but supposed that by the general terms in which the letter referred to the property, the water-privilege to be conveyed was the first right to the water in sufficient quantity to supply the large water-wheel appurtenant to the factory, according to its then dimensions, and thereby to operate any machinery that could be put into the factory, and not that they were limited to water sufficient to operate one thousand spindles of water frames as used in 1812. The water-privilege must have been one of the principal, if not the most important object of the purchase. And without the most plain and explicit language was used, it would be unreasonable to compel the defendants to carry into execution a contract clogged with such a limitation, which would very much embarrass, if not preclude them from availing themselves of the improved machinery that is almost daily brought into operation. And if such was clearly the contract, it would be a hard and unreasonable bargain, and one which a court would feel itself under no obligation to see carried into specific execution. The contract, which is sought to be specifically executed, ought not only to be proved, but the terms of it should be so precise that neither party could reasonably misunderstand them. If the contract be vague or uncertain, a court of equity will not exercise its extraordinary jurisdiction to enforce it, but leave the party to his legal remedy. [Colson v. Thompson] 2 Wheat. [15 U. S.] 341. Nor will it compel a specific performance when it is a hard and unreasonable contract. 2 Schoales & L. 165. So, where it appears that at the time of entering into the contract for the sale of a tract of land there was a misunderstanding between the parties as to the identity of the land to which the contract related, a court of equity, in its discretion, will not interfere by decreeing a specific performance. 5 Munf. 1015. If this be a sound rule, it applies with peculiar force to the present case; for, admitting that Jason Waters would be bound by the letter of the 16th of September, and could not set up any mistake or misapprehension, this could not, in justice, be set up against the other defendants, for the contents of that letter were clearly unknown to them. And if it should even be admitted that the other defendants had so far made Jason Waters their agent to complete the purchase, as to make it binding on them at law, it would by no means follow that this court would decree a specific performance, if there was clearly a mistake or misapprehension as to the subject-matter of the contract, or if it would be unjust or inequitable to enforce it.

These are familiar principles applicable to this branch of equity jurisdiction. In the case of Buxton v. Lister, 3 Atk. 383, it was said that nothing is more established in a court of equity than that every agreement ought to be certain, fair and just in all its parts, and that if any of these ingredients are wanting in the case, the court will not decree a specific performance; all the material facts must be known to both parties. And again, in Mortlock v. Buller, 10 Ves. 305, the doctrine laid down is that a court of equity is not bound specifically to execute every contract. That if there was any sort surprise that made it not fair or honest to call for an execution, chancery would not lend the extraordinary aid of decreeing a specific performance. And this relief is often denied even when the circumstances are not sufficiently strong to induce the court to require the contract to be given up. In the case of Osgood v. Franklin, 2 Johns. Ch. 23, it is said there is a very important distinction, which runs through the cases, between ordering a contract to be rescinded and decreeing a specific execution. It is not an uncommon case for the court to refuse to enforce for inadequacy of price, and yet refuse to rescind.

In the case now before the court, it is very difficult to say whether any certain and precise contract was concluded between the parties, growing out of the correspondence. And if the letter of the 16th of September is laid out of view, there is certainly not enough to support the contract according to the complainant's view of it, as shown by the deed tendered. The water-privilege thereby conveyed is as follows: "Together with the water-privilege calculated to drive one thousand spindles in water-frames, and the necessary apparatus and machinery to prepare cotton for spinning, according to the practice in January, 1812. And also a sufficiency of water for a machine-shop, to make and repair machinery for the use of said mill or factory thereon standing, at all seasons of the year." The correspondence, according to every reasonable construction, shows that the defendants were to have conveyed to them the factory with the first privilege of the water. And this would, according to every reasonable intendment, carry a right to operate any machinery that might be put into the factory, and driven by a water-wheel of the dimensions of the one then in use. To restrict the quantity of water to any particular kind of machinery, would either preclude

the defendants from ever making any improvement or changing the machinery. Or if such charge was made, leave the question open to litigation whether a greater quantity of water was not used than would have driven one thousand spindles in water-frames, according to the practice in 1812. Nor would the correspondence seem to warrant the other restriction or limitation of water for the machine-shop, to the making and repairing machinery for the use of the factory only. But admitting the contract to be made out according to the terms of the deed, it is very certain that it was not according to the understanding of at least two of the defendants; and would, therefore, be a contract entered into through mistake and misapprehension, and without a full knowledge of all the circumstances; and in this view of it, would be one of those cases in which the complainants should be left to their remedy at law to recover damages for breach of the contract. The bill must, accordingly, be dismissed without prejudice—with costs.